**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **LOCAL 55 TRUSTEES OF THE IRON WORKERS' PENSION PLAN,** | CASE NO. 3:25 CV 1962 |
| Plaintiff, | |
| v. | JUDGE JAMES R. KNEPP II |
| **MATTHEW CORBETT PRINCE, et al.,** | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

## INTRODUCTION

Presently before the Court in this interpleader action is Defendant Matthew Corbett Prince's ("Matthew") Motion to Dismiss Co-Defendant Darlene Prince's ("Darlene") Crossclaim for Equitable Restitution. (Docs. 11, 13). Darlene opposed (Doc. 15), and Matthew replied (Doc. 16). Jurisdiction is proper under 28 U.S.C. § 1331. For the reasons stated below, the Court denies Matthew's Motion to Dismiss.

## BACKGROUND

Warren Prince ("Warren"), an iron worker and participant in the pension plan managed by Local 55 Trustees of the Iron Workers' Pension Plan ("Local 55"), passed away in April 2022, and was survived by his son, Matthew. (Doc. 1, at 2). In 2013, Warren completed a beneficiary designation form naming Matthew as the intended primary beneficiary of his pension benefits under the plan. *Id.*; Doc. 1-3. The plan made pre-retirement death benefits payable either to the decedent's beneficiary or surviving eligible spouse. (Doc. 1, at 2). Local 55 knew of no surviving spouse at the time of Warren's death, and none initially came forward to assert a claim to Warren's

1

pension benefits. *Id.* at 3. Accordingly, Local 55 approved Matthew's application for Warren's pension benefits and began making monthly payments of $1,511.62 to Matthew in September 2022. *Id.*

More than three years after Warren's death, Darlene contacted Local 55 indicating she was Warren's surviving spouse. *Id.* Darlene completed an application for Warren's pension benefits, including with it a copy of a New York marriage certificate evidencing her marriage to Warren in 1993. *Id.* at 3–4; Doc. 1-8. Local 55 scheduled a meeting of the Board of Trustees for August 2025 to determine whether Matthew or Darlene was the rightful beneficiary. Doc. 1, at 4. In advance of this meeting, Matthew submitted evidence to rebut Darlene's claim, including a marriage license from Mississippi evidencing a 2003 marriage between Warren and a woman other than Darlene, a 2009 divorce judgment from Mississippi dissolving the marriage between Warren and this other woman, and numerous Facebook posts from Darlene's account purporting to show her own subsequent marriage to a man other than Warren. *See* Doc. 1, at 4; Doc. 1-10; Doc. 1-11.

After its August 2025 meeting, Local 55 notified Matthew and Darlene it was unable to resolve the question of whether Darlene is Warren's surviving spouse. (Doc. 1, at 5). According to Local 55, "[i]f Darlene is the surviving spouse of Decedent as she alleges, she is entitled to the remaining amount of Decedent's pre-retirement benefit. *Id.* However, Local 55 remains "unable to determine if Darlene is the surviving spouse of Decedent." *Id.* This interpleader action followed.

Darlene, after answering Local 55's Interpleader Complaint, filed a Cross Complaint against Matthew seeking: (1) a declaratory judgment identifying her as Warren's surviving spouse and rightful beneficiary of his pre-retirement death benefit; and (2) equitable restitution from Matthew due to his unjust receipt of "a substantial amount of Warren's pre-retirement death benefit." (Doc. 11, at 3–4). In substance, Count II of Darlene's Cross Complaint seeks equitable

2

restitution through return of the 32 payments Matthew received after Warren's death, totaling $48,371.84. (Doc. 15, at 5–6). Matthew moved to dismiss Count II of Darlene's Cross Complaint arguing it seeks legal relief unavailable pursuant to the Employee Retirement Income Security Act ("ERISA") § 502(a)(3). *See* 29 U.S.C. § 1132(a)(3) (codifying ERISA § 502(a)(3)).

### STANDARD OF REVIEW

A motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6) charges the Court with assessing the legal sufficiency of a plaintiff's complaint. *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In so doing, the Court must answer only whether the plaintiff's factual allegations, accepted as true, state a legally viable claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mere legal conclusions, however, are not taken as true, and sufficiently stating a claim for relief therefore requires more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### DISCUSSION

ERISA's Equitable Relief Framework

Section 502(a)(3) of ERISA, codified at 29 U.S.C. § 1132(a)(3), is "a 'catchall' cause of action" allowing plan beneficiaries, including those claiming to be the rightful beneficiary of a plan's benefits, to sue to "'enjoin any act or practice which violates [ERISA] or the terms of the plan' or 'to obtain other *appropriate equitable relief* (i) to redress such violations or (ii) to enforce [ERISA] or the terms of the plan.'" *Aldridge v. Regions Bank*, 144 F.4th 828, 844 (6th Cir. 2025) (first quoting *Varity Corp. v. Howe*, 516 U.S. 489, 511 (1996); and then quoting 29 U.S.C. § 1132(a)(3)). Section 1132(a)(3)'s provision of "other appropriate equitable relief" allows plaintiffs to obtain "only those remedies 'that were typically available in equity'" during the days of the

divided bench. *Id.* at 845–46 (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993)). Thus, the operative question at this stage is whether Darlene's request for "equitable restitution" falls within the scope of § 1332(a)(3)'s "other appropriate equitable relief" language as a matter of law.

Generally, there are three different senses in which the term "restitution" may be used. The first is to refer to a "measure of damages" in breach of contract cases where the damages award is designed "to restore the injured party to the position it occupied before the breach occurred." *Massillon Mgmt., LLC v. Americold Realty Tr.*, 2009 WL 10720178, at *10 (N.D. Ohio). The second is as a freestanding *legal* claim for relief "[i]n cases in which the plaintiff 'could *not* assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him.'" *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) (quoting 1 Dan B. Dobbs, Law of Remedies § 4.2(1), at p. 571 (2d ed. 1993)). Such a legal claim derives from the "common-law writ of assumpsit" and permits the plaintiff "to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money." *Id.* (quoting Restatement (First) of Restitution § 160 cmt. a (Am. Law Inst. 1936)).[1]

The third and final sense in which restitution may be used is to refer to a "cluster" of equitable remedies, including "accounting for profits, constructive trust, equitable lien, subrogation, and equitable recission." Samuel L. Bray, *The System of Equitable Remedies*, 63 UCLA L. Rev. 530, 541–42 (2016). These restitutionary equitable remedies involve granting the plaintiff "ownership or security or priority in an identifiable asset or fund" presently in the

---

1. The legal claim for restitution and the associated (legal) remedy of restitution are often jointly referred to as arising under the law of "quasi-contract" or "unjust enrichment." Samuel L. Bray, *A Catalog of Legal and Equitable Remedies* 3 n.19 (August 4, 2025), available at https://ssrn.com/abstract=5378666.

possession of the defendant. Restatement (Third) of Restitution § 4 cmt. d (Am. Law Inst. 2011); *accord Great-West*, 534 U.S. at 213 ("A plaintiff [can] seek restitution *in equity*, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could be traced to particular funds or property in the defendant's possession.").

Only if Darlene's request for equitable restitution does, in fact, plausibly fall within this third sense of restitution is it facially authorized by § 1132(a)(3) and thus survive Matthew's Motion to Dismiss. The Supreme Court has determined restitution is equitable rather than legal under § 1132(a)(3) according to "'the basis for [the plaintiff's] claim' and the nature of the underlying remedy sought." *Great-West*, 534 U.S. at 213 (quoting *Reich v. Cont'l Cas. Co.*, 33 F.3d 754, 756 (7th Cir. 1994)). Both elements must be satisfied for § 1132(a)(3) to encompass the relief sought. *See Montanile v. Bd. of Trs. of Nat'l Indus. Health Benefit Plan*, 577 U.S. 136, 144–45 (2016) (analyzing whether the remedy sought is equitable or legal *after* determining the basis for the claim is equitable).

When a plaintiff seeks equitable restitution pursuant to § 1132(a)(3), "the restitution must involve the imposition of a constructive trust or equitable lien on 'particular funds or property in the [defendant's] possession.'" *Hall v. Liberty Life Assur. Co.*, 595 F.3d 270, 274–75 (6th Cir. 2010) (quoting *Great-West*, 534 U.S. at 213). Thus, the basis for a plaintiff's claim will be equitable where they "seek *specific* 'funds' in the [defendant's] possession—not a money judgment collectable from any of the [defendant's] *general* assets." *Aldridge*, 144 F. 4th at 846. Even where such an equitable *claim* is properly asserted, however, the ultimate *remedy* must also be equitable for relief to be available under § 1132(a)(3). Resolving the basis for the plaintiff's claim often resolves the two-part inquiry under *Great-West*, as it is difficult to maintain a claim

5

for equitable relief while ultimately pursuing a legal remedy. *Cf. id.* at 846–47 (describing the question of whether the "type of relief" sought by the plaintiffs fell within § 1132(a)(3) as a singular "remedies question").

Occasionally, however, these two elements diverge. For example, in *Montanile*, the Court determined the basis for the plaintiff's claim was equitable, as the plaintiff sought to enforce an "equitable lien by agreement" which entitled them to recover a settlement fund received by the defendant (a plan participant). *Montanile*, 577 U.S. at 144. Nevertheless, the Court determined § 1132(a)(3) does not authorize such a suit to recover funds from the defendant's general assets once the defendant had spent the funds subject to the equitable lien by agreement on nontraceable items. *Id.* at 144–45 ("[A] plaintiff could ordinarily enforce an equitable lien only against specifically identified funds that remain in the defendant's possession or against traceable items that the defendant purchased with the funds (*e.g.*, identifiable property like a car)."). In effect, the defendant can render the relief sought legal where they dissipate the entire fund to which an equitable lien or constructive trust previously attached, leaving the plaintiff to recover only from their general assets. *Id.* at 145–46 ("'[W]here a person wrongfully dispose[d] of the property of another but the property cannot be traced into any product, the other cannot enforce a constructive trust or equitable lien *upon any part of the wrongdoer's property.*'") (quoting Restatement (First) of Restitution § 215(1) (Am. Law Inst. 1937)).[2]

---

2. The Supreme Court previously suggested courts may relax the requirement that the defendant either be in possession of the particular funds or have spent the funds on traceable property where the plaintiff seeks to enforce an "equitable lien 'by agreement'" as opposed to an equitable lien sounding independently in restitution. *Sereboff v. Mid Atl. Med. Servs.*, 547 U.S. 356, 364–65 (2006); *accord Gilchrest v. Unum Life Ins. Co.*, 225 F. App'x 38, 44–45 (6th Cir. 2007) (explaining the *Sereboff* Court "clarified that to establish an equitable lien by agreement, strict tracing of funds is not required."). However, the Court later clarified that *Sereboff* "left untouched the rule that *all* types of equitable liens must be enforced against a specifically identifiable fund in the defendant's possession" and instead held a plaintiff seeking an equitable lien by agreement need not "identify

<u>Framework Application</u>

Matthew, the crossclaim defendant for purposes of his Motion to Dismiss, argues Darlene's crossclaim for equitable restitution fails both elements of the *Great-West* framework. First, Matthew argues Darlene "identifies no segregated fund or lien by agreement" to which an equitable claim for the restitution of property may attach. (Doc. 13, at 5). Second, Matthew argues the remedy sought by Darlene is, in effect, "repayment of general funds—legal damages not available under" § 1132(a)(3). *Id.*; Doc. 16, at 4 (arguing Darlene's "undisputed three-year delay—during which Matthew was repeatedly assured by the Plan that he was the lawful beneficiary—makes the existence of any traceable fund implausible as a matter of law").

The Court is unpersuaded by these arguments. Darlene's crossclaim, while sparse, contains sufficient factual allegations to pass the threshold pleading standard of Rule 12(b)(6). Darlene's crossclaim, in its entirety, states the following:

> 23. Darlene incorporates the foregoing paragraphs as if fully restated herein.
>
> 24. Since Darlene is the surviving spouse of Warren, she is the proper beneficiary of Warren's pre-retirement benefit and entitled to the full amount of Warren's pre-retirement death benefit.
>
> 25. Since 2022, Matthew has unjustly received a substantial amount of Warren's pre-retirement death benefit.
>
> 26. Darlene seeks to recover the funds that Matthew unjustly received.
>
> 27. Upon information and belief, the funds that Matthew unjustly received are traceable and thus recoverable by Darlene.

---

an asset [the plaintiff] originally possessed, which was improperly acquired and converted into property the defendant held." *Montanile*, 577 U.S. at 146–47 (quoting *Sereboff*, 547 U.S. at 365). In equitable restitution cases generally, the plaintiff need not allege they previously possessed the specific fund now in the defendant's possession, as a claim for equitable restitution may lie where "a third person makes a payment to the defendant to which . . . the claimant has a better . . . equitable right." Restatement (Third) of Restitution § 48 (Am. Law Inst. 2011).

(Doc. 11, at 4–5). The Court finds these allegations sufficient to plausibly plead a claim for the return of "property identified as belonging in good conscience to the plaintiff . . . [that can be] traced to particular funds or property in the defendant's possession." *Great-West*, 534 U.S. at 213. To the first element under *Great-West*, Darlene identifies a specific "fund" of money in the form of the pre-retirement death benefits paid monthly to Matthew following Warren's death in 2022. (Doc. 11, at 2). According to Local 55's Interpleader Complaint and Matthew's Answer thereto, this discrete fund identified by Darlene totals $48,371.84. (Doc. 1, at 3; Doc. 7, at 3). Far from seeking to impose personal liability on Matthew for harm or loss sustained to her person or property presently in her possession, Darlene claims "a right to recover a particular fund: the [mistaken] payment" tendered to Matthew by Local 55. *Zirbel v. Ford Motor Co.*, 980 F.3d 520, 524 (6th Cir. 2020). Contrary to Matthew's assertions, Darlene need not identify an "existing account" where this fund resides or particular pieces of property on which it has been spent. At least at this stage, it is sufficient under the first part of the *Great-West* framework for Darlene to allege the existence of a discrete fund, distinct from Matthew's general assets, of which she is the rightful possessor and to which one of the equitable remedies forming the "cluster" of equitable restitution may attach. Her crossclaim does exactly that.

Under the second element of the *Great-West* inquiry, as explained in *Montanile*, the funds Darlene seeks must be either in Matthew's possession or otherwise "traceable" for the final remedy to be equitable. *See Montanile*, 577 U.S. 145–46. Darlene does not specifically allege Matthew is in active possession of the mistaken payments comprising the fund she seeks to recover. Instead, Darlene alleges "[u]pon information and belief" the funds generally are "traceable." (Doc. 11, at 5). Whether monetary funds like the kind at issue here are, in fact, deemed traceable to the original property to which the equitable lien or constructive trust attached depends on whether the

8

defendant purchased "traceable items . . . with the funds (*e.g.*, identifiable property like a car)" or expended the fund "on nontraceable items (like food or travel)." *Montanile*, 577 U.S. at 144–45. Here, Matthew contests Darlene's traceability allegation, stating in his Answer to Local 55's Interpleader Complaint that "no specifically identifiable funds remain in his possession" (Doc. 7, at 5), and further arguing in the present Motion that Darlene "alleges no facts establishing . . . [a] traceable res in Matthew's possession" (Doc. 13, at 3).

The Court finds Darlene's allegations regarding traceability sufficient to overcome Matthew's Motion to Dismiss. Pleading upon information and belief is proper where "a plaintiff may lack personal knowledge of a fact" and must instead "'rely on information furnished by others.'" *Starkey v. JPMorgan Chase Bank, N.A.*, 573 F. App'x 444, 447–48 (quoting 5 Charles Alan Wright & Arthur Rul Miller, Federal Practice & Procedure § 1224 (3d ed. 2012)). Here, Matthew is uniquely positioned to provide receipts of purchase and other evidence necessary to determine whether the pre-retirement death benefits were spent on identifiable (and thus traceable) property or nontraceable items like "food or travel." Even if Darlene could independently determine what traceable property Matthew purchased since 2022, she would have little way of knowing whether Matthew used pre-retirement death benefit funds or funds from his general assets to make such purchases. Thus, the Court agrees with Darlene that she "has no way to trace the funds received by Matthew without formal discovery." (Doc. 15, at 6). Having determined as much, the dueling allegations between the parties regarding the traceability of pre-retirement death benefit funds is an issue of fact that cannot be resolved on a motion to dismiss.

In sum, by (1) seeking the return of a discrete fund of which Darlene asserts she is the rightful possessor and (2) alleging such fund is traceable, Darlene has properly plead a claim for equitable restitution under the *Great-West* framework.

9

Remaining Issues

Matthew raises three additional bases for dismissal, each of which lacks merit. First, Matthew argues Darlene fails to plausibly allege she is Warren's surviving spouse such that she is entitled to the pre-retirement death benefits paid to Matthew. (Doc. 13, at 4–5). In effect, Matthew misconstrues the standard applicable to a Motion to Dismiss. As previously described, Darlene must plead sufficient facts such that each element of her claim to relief is plausible, as a "formulaic recitation of the elements of a cause of action" is insufficient. *Twombly*, 550 U.S. at 555. Here, the substantive elements of her claim for equitable restitution include demonstrating Matthew was unjustly enriched because Darlene was the rightful recipient of Warren's pre-retirement death benefit. *See* Restatement (Third) of Restitution § 1 & cmt. a (Am. Law Inst. 2011) ("Liability in restitution derives from the receipt of a benefit whose retention without payment would result in the unjust enrichment of the defendant at the expense of the claimant."). The factual support for these elements, particularly Matthew's unjust enrichment at the expense of Darlene, is Darlene's factual status as Warren's surviving spouse. Darlene, under the Rule 12(b)(6) standard, is not required to provide recursive factual support for each assertion underlying her claim. Darlene's complaint cannot be factual "turtles all the way down." *Rapanos v. United States*, 547 U.S. 715, 754 & n.14 (2006). At some point, an element of Darlene's claim will have to rest on a freestanding factual assertion which, this stage, the Court must accept as true. *See Twombly*, 55 U.S. at 555. Her status as Warren's surviving spouse is one such fact, and any failure to support this factual assertion in her crossclaim does not render it subject to dismissal under 12(b)(6).

Second, Matthew argues Darlene's crossclaim must be dismissed because it "duplicates" the dispute captured by Local 55's Interpleader Complaint and Count I of her Cross Complaint seeking declaratory relief. On Matthew's account, pursuing such duplicative relief under §

10

1132(a)(3) is barred where "other statutory remedies are adequate." (Doc. 13, at 5 (citing *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 374 (6th Cir. 2015)). In *Rochow*, however, the Sixth Circuit explained equitable relief pursuant to § 1132(a)(3) would be inappropriate only "where Congress elsewhere provided *adequate* relief for a beneficiary's *injury*" through other related ERISA provisions. *Rochow*, 780 F.3d at 371 (quoting *Varity Corp. v. Howe*, 514 U.S 489, 515 (1996)). Darlene's claimed injury as it relates to her crossclaim, however, is the failure to receive 32 months worth of Warren's pre-retirement death benefits payments due to their wrongful prior disbursement to Matthew. (Doc. 11, at 3). The funds available in the underlying interpleader action, which consists of only those funds yet to be paid on Warren's pre-retirement death benefit, would not remedy this injury. *Rochow*, 780 F.3d at 371–72 (explaining ERISA's remedial scheme, including § 1132(a)(3)'s authorization to sue for other appropriate equitable relief, is designed to make a claimant whole). Because Matthew identifies no provision of ERISA's remedial scheme other than § 1132(a)(3) which would allow Darlene to obtain the restitutionary relief she now seeks or some adequate alternative, Darlene's claim may proceed.

Third, Matthew argues Darlene's decision to assert a claim on Warren's pre-retirement death benefit with Local 55 in April 2025, roughly three years after Warren's death, means her present claim for equitable restitution is barred by "the doctrine of laches." Laches, however, is an "affirmative defense" and "is 'principally a question of the inequity of permitting the claim to be enforced.'" *McKeon Prods., Inc. v. Howard S. Leight & Assocs.*, 14 F.4th 736, 742 (6th Cir. 2021) (quoting *Ford Motor Co. v. Catalanotte*, 342 F.3d 543, 550 (6th Cir. 2003)). Matthew, not Darlene, thus bears the burden to demonstrate both Darlene's failure to exercise reasonable diligence and prejudice to his interests. *See id.*; Restatement (Third) of Restitution § 70 (Am. Law Inst. 2011) (describing the elements of a laches affirmative defense). Dismissal on this basis would be

11

improper, as the success of Matthew's affirmative defense has no bearing on whether Darlene plausibly plead a claim for equitable restitution in the first instance sufficient to survive a Rule 12(b)(6) challenge.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Crossclaim Defendant Matthew Prince's Motion to Dismiss (Doc. 13) be, and the same hereby is, DENIED.

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: March 12, 2026